# United States Tax Court

T.C. Memo. 2023-115

MICHAEL R. STEVENSON,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————

Docket No. 22961-22L.                    Filed September 11, 2023.

————

*Scott B. Burkholder* and *David C. Holtz*, for petitioner.

*Albert B. Brewster II*, for respondent.

## MEMORANDUM OPINION

URDA, *Judge*: In this collection due process (CDP) case, petitioner, Michael R. Stevenson, seeks review pursuant to section 6330(d)(1)[1] of the determination of the Internal Revenue Service's (IRS) Independent Office of Appeals (Appeals) to uphold a notice of intent to levy with respect to Mr. Stevenson's unpaid income tax liability for 2019. Mr. Stevenson principally contends that the settlement officer assigned to his case abused her discretion by rejecting his proposed collection alternatives and sustaining the notice of intent to levy.

The Commissioner has moved for summary judgment, contending that the undisputed facts establish that Mr. Stevenson was not in compliance with his estimated tax payment obligations and the

—————

[1] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C. (I.R.C.), in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure. Amounts are rounded to the nearest dollar.

**[\*2]** settlement officer thus was justified in sustaining the notice of intent to levy. We agree and will grant the Commissioner's motion.

## *Background*

The following facts are based on the parties' pleadings, motion papers, and supporting exhibits, which included the administrative record that formed the basis of the settlement officer's determination. *See* Rule 121(c). Mr. Stevenson lived in California when he timely filed his petition.

I.   *Mr. Stevenson's 2019 Tax Liability*

Mr. Stevenson, a very successful rapper who goes by the stage name Tyga, timely filed his 2019 federal income tax return but failed to pay the reported liability of $2,166,469. In an effort to collect this liability, the IRS issued a notice of intent to levy, which stated that he owed $2,319,678 in tax, interest, and penalties for 2019.[2]   Mr. Stevenson's liability included an addition to tax for failure to pay estimated tax, which was part of a pattern stretching back to 2012.

II.   *CDP Proceeding*

Mr. Stevenson timely requested a CDP hearing, indicating his interest in either an installment agreement or an offer-in-compromise (OIC). The settlement officer assigned to the case sent a letter scheduling a conference with Mr. Stevenson's representative for November 4, 2021.

The letter emphasized that, "[f]or consideration of an Installment Agreement or Offer in Compromise you must be in full filing and payment compliance" and instructed Mr. Stevenson to bring "proof of complete estimated payments for the current year" to the CDP hearing. The letter also advised him to submit a "Form 433-A (Collection Information Statement for Individuals) . . . with all supporting documentation," including income and bank statements, for the settlement officer's use in evaluating any collection alternative.

The conference proceeded as scheduled, with Mr. Stevenson's representative reiterating his interest in an installment agreement. Mr.

---

[2] The IRS also issued a notice of federal tax lien (NFTL) filing to Mr. Stevenson to collect this liability. The NFTL filing is not before us, however, as Mr. Stevenson failed to challenge the notice of determination that upheld the NFTL filing.

[*3] Stevenson's representative stated that his client had been paying $65,000 a month pursuant to a previous IRS installment agreement but that ongoing litigation and a downturn in touring revenues called into question Mr. Stevenson's ability to continue to pay at that level.

After noting that Mr. Stevenson had not provided the financial documentation necessary to analyze any installment agreement (as requested in her letter), the settlement officer gave him two weeks (i.e., until November 19, 2021) to provide financial information and proof of compliance with his estimated tax payments. She stressed to the representative that consideration of any installment agreement was contingent on full filing and payment compliance, noting that IRS records did not reflect any 2021 estimated tax payment by Mr. Stevenson.

November 19 came and went, but Mr. Stevenson did not provide the information requested. The settlement officer ultimately received information from Mr. Stevenson on December 1, 2021, along with a cover letter indicating his intention to make an estimated tax payment for tax year 2021 in early December.

The cover letter proposed an installment agreement of $13,000 per month to satisfy Mr. Stevenson's outstanding 2012–19 liabilities. In support Mr. Stevenson submitted a Form 433-A, Collection Information Statement for Wage-Earners and Self-Employed Individuals, as well as supporting information from (1) his bank, (2) Too Raww, LLC, and (3) Tyga Touring, Inc., identified as Mr. Stevenson's primary business entity. The Form 433-A reported monthly net business income of $73,211 and living expenses of $60,145, which included a monthly expense of $37,224 for current year taxes.

In response the settlement officer called Mr. Stevenson's representative, emphasizing the need for filing and payment compliance before consideration of any collection alternative. She explained that her review of Mr. Stevenson's account showed that he had consistently failed to make estimated tax payments over the preceding nine years. She also pointed out that he had failed to make any estimated tax payments in 2021, despite a projected liability for the first three quarters exceeding $335,000 (with another payment due January 15, 2022).

Mr. Stevenson made an estimated tax payment on December 21, 2021, sufficient to cover the first three quarters of 2021. Given his

[*4] compliance, the settlement officer referred Mr. Stevenson's Form 433-A information to the IRS's Collection Division for financial analysis. Despite the referral, the settlement officer requested that Mr. Stevenson continue to provide proof of his estimated tax payments, the next of which was due January 15, 2022. No such proof was provided for that payment or any other payment in 2022.

The Collection Division did not provide a financial analysis and, consistent with *Internal Revenue Manual* (IRM) 8.22.7.4.1(2) (Aug. 26, 2020), the settlement officer proceeded to evaluate Mr. Stevenson's proposed agreement in July 2022. She determined that Mr. Stevenson could pay $87,169 per month, based upon monthly income of $146,013 and expenses of $58,844.

The settlement officer derived Mr. Stevenson's monthly income by averaging the income he reported on his 2020 federal income tax return and the income for 2021 identified by the IRS's Information Return Penalty (IRP) system (as he had not yet filed his 2021 tax return).[3] She determined his expense amounts by considering those expenses identified by Mr. Stevenson that she found sufficiently substantiated, as well as the national and local expense standards.[4] During her review the settlement officer also noted that, as of July 11, 2022, Mr. Stevenson had not made any estimated tax payments for 2022.

The settlement officer spoke with Mr. Stevenson's representative on July 26 to explain her financial analysis. During that conversation the settlement officer agreed to a deadline of August 22, 2022, for Mr. Stevenson to provide proof of estimated tax payments for 2022 and any additional substantiation of his expenses. Mr. Stevenson failed to meet this deadline.

---

[3] The IRS's IRP system receives data submitted by employers and other third parties reporting income of taxpayers during the year. *See McCrory v. Commissioner*, T.C. Memo. 2021-116, at *6 n.10; *Frantz v. Commissioner*, T.C. Memo. 2020-64, at *6 n.5.

[4] Pursuant to Congress's directive, the IRS has published national and local allowances to ensure that taxpayers entering into collection alternatives have adequate means to provide for basic living expenses. I.R.C. § 7122(d)(1) and (2)(A); *see Ansley v. Commissioner*, T.C. Memo. 2019-46, at *16–17; *see also Boettcher v. Commissioner*, T.C. Memo. 2021-4, at *7–8; *Aldridge v. Commissioner*, T.C. Memo. 2009-276, 2009 WL 4282048, at *6.

**[\*5]**  On August 31, 2022, Mr. Stevenson's representative called the settlement officer to indicate that he planned to submit an OIC. The settlement officer responded that an OIC could not be processed because of Mr. Stevenson's lack of compliance with his estimated tax obligations, noting that he had "accrued over $8 million in outstanding liabilities . . . and he continues to not meet his tax obligations." The settlement officer set a deadline of September 7, 2022, for the submission of proof of estimated tax payments and any OIC.

Once again, Mr. Stevenson did not meet the deadline. Although his representative requested yet another extension, his plea fell on deaf ears. On September 27, 2022, the IRS issued a notice of determination, upholding the levy on account of Mr. Stevenson's "lack of compliance with making [his] required Estimated Payments."

*Discussion*

I.  *General Principles*

A.  *Scope of Review*

"[S]ummary judgment serves as a mechanism for deciding, as a matter of law, whether [an] agency action is supported by the administrative record and is not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Belair v. Commissioner*, 157 T.C. 10, 17 (2021) (quoting *Van Bemmelen v. Commissioner*, 155 T.C. 64, 79 (2020)). Our decision in this case is most likely appealable to the U.S. Court of Appeals for the Ninth Circuit, *see* I.R.C. § 7482(b)(1)(G)(i), (2), which has held that, absent a proper challenge to the underlying liability, the scope of review in a CDP case is confined to the administrative record, *see Keller v. Commissioner*, 568 F.3d 710, 718 (9th Cir. 2009), *aff'g in part* T.C. Memo. 2006-166, *and aff'g in part, vacating in part* decisions in related cases; *Starcher v. Commissioner*, T.C. Memo. 2021-144, at \*7.[5]

---

[5] Mr. Stevenson asserts that the "[r]ecord [s]ubmitted is [i]ncomplete." He bases this assertion on the Commissioner's description of the exhibits in support of his motion for summary judgment. Mr. Stevenson fails to identify any documents that he believes are missing from the administrative record, and the declaration attached to the motion for summary judgment makes clear that the exhibits to the declaration "collectively comprise the complete administrative record of the . . . appeal under I.R.C. § 6330."

**[\*6]** B.     *Standard of Review*

We have jurisdiction to review Appeals' determination pursuant to section 6330(d)(1).  Where, as here, the underlying tax liabilities are not at issue, we review Appeals' determination regarding the sustained action for abuse of discretion.  *Sego v. Commissioner*, 114 T.C. 604, 610 (2000); *Goza v. Commissioner*, 114 T.C. 176, 182 (2000).  In reviewing for abuse of discretion, we must uphold Appeals' determination unless it is arbitrary, capricious, or without sound basis in fact or law.  *See, e.g.*, *Murphy v. Commissioner*, 125 T.C. 301, 320 (2005), *aff'd*, 469 F.3d 27 (1st Cir. 2006); *Taylor v. Commissioner*, T.C. Memo. 2009-27, 2009 WL 275721, at \*9.

II.     *Analysis*

In the context of reviewing a settlement officer's determination, we review the record to determine whether the settlement officer:

> (1) properly verified that the requirements of applicable law or administrative procedure have been met; (2) considered any relevant issues [Mr. Stevenson] raised; and (3) considered whether "any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern [of Mr. Stevenson] that any collection action be no more intrusive than necessary."

*See Ludlam v. Commissioner*, T.C. Memo. 2019-21, at \*9–10, *aff'd per curiam*, 810 F. App'x 845 (11th Cir. 2020) (quoting I.R.C. § 6330(c)(3)(C)).  The settlement officer satisfied all of these requirements.

A.     *Verification*

This Court has authority to review satisfaction of the verification requirement regardless of whether the taxpayer raised the issue at the CDP hearing.  *See Hoyle v. Commissioner*, 131 T.C. 197, 200–03 (2008), *supplemented by* 136 T.C. 463 (2011).  Aside from a conclusory allegation in his petition, Mr. Stevenson has not argued that the settlement officer failed to satisfy this verification requirement.  In any event our review of the record shows that the settlement officer conducted a thorough review of Mr. Stevenson's file and verified that all applicable requirements were met.

[*7]    B.    *Issues Raised*

Mr. Stevenson argues that the settlement officer abused her discretion in upholding the collection action because she failed to afford him adequate time to become current on his estimated tax obligations. He also challenges the settlement officer's financial analysis, contending that she improperly proceeded without input from the Collection Division, overstated his ability to pay, and failed to provide adequate time for him to submit an OIC. We conclude that the settlement officer acted reasonably in upholding the collection action because of Mr. Stevenson's consistent refusal to meet his estimated tax payment obligations, obviating the need to consider the remainder of his challenges.

A settlement officer does not abuse her discretion by rejecting collection alternatives when a taxpayer is not in compliance with estimated tax obligations. *Giamelli v. Commissioner*, 129 T.C. 107, 111–12 (2007); *Biggs-Owens v. Commissioner*, T.C. Memo. 2020-113, at *11; *Ransom v. Commissioner*, T.C. Memo. 2018-211, at *9, *aff'd*, 784 F. App'x 800 (D.C. Cir. 2019). Requiring such compliance "ensures that current taxes are paid and avoids 'the risk of pyramiding liability.'" *Northside Carting, Inc. v. Commissioner*, T.C. Memo. 2020-18, at *17 (quoting *Hull v. Commissioner*, T.C. Memo. 2015-86, at *15). Mr. Stevenson was not in compliance with his 2022 estimated tax payments—a chronic problem over the previous decade—and rejection of collection alternatives was plainly within the settlement officer's discretion.

Nor did the settlement officer abuse her discretion in declining to provide additional time for Mr. Stevenson to become current with his estimated tax payments. From her first letter in October 2021, the settlement officer advised Mr. Stevenson of the importance of keeping current with estimated tax obligations for the consideration of any collection alternative. Although Mr. Stevenson was not current at the time of the CDP hearing, the settlement officer granted several extensions throughout November and December to allow him to come into compliance.

The settlement officer again emphasized in January 2022 the need for Mr. Stevenson to keep up to date with his estimated tax obligations. Despite being the beneficiary of the settlement officer's patience in 2021, Mr. Stevenson fell back into the same routine in 2022. The settlement officer nonetheless afforded him time to come current,

[*8] agreeing with his representative (on July 26, 2022) to allow proof of estimated tax compliance by August 22, 2022. He did not supply such proof. The settlement officer again gave Mr. Stevenson an extension on August 31, despite his accruing "over $8 million in outstanding liabilities" and his persistent failure to "meet his tax obligations."

Against this long backdrop of oft-fruitless accommodation, we cannot fault the settlement officer for ultimately determining that enough was enough. *See, e.g.*, *Biggs-Owen*, T.C. Memo. 2020-113, at *13; *Northside Carting*, T.C. Memo. 2020-18, at *17. The settlement officer was within her discretion in denying another extension of time and rejecting any collection alternatives for lack of compliance with estimated tax obligations.[6]

### C. *Balancing*

Aside from a conclusory allegation in his petition, Mr. Stevenson has not argued that the settlement officer failed to consider "whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of the person that any collection action be no more intrusive than necessary." I.R.C. § 6330(c)(3)(C). He thus has conceded this issue. *See Ansley*, T.C. Memo. 2019-46, at *19. In any event, we see no reason to disturb the settlement officer's express conclusion in the notice of determination that the proposed levy action balanced the need for efficient tax collection with any of Mr. Stevenson's legitimate concerns about intrusiveness.

### III. *Conclusion*

Finding no abuse of discretion, we will grant summary judgment for the Commissioner and affirm the IRS's determination to sustain the proposed collection action.

---

[6] Given our ruling on this point, Mr. Stevenson's arguments about the settlement officer's consideration of collection alternatives are of no moment. We note in passing that the settlement officer acted in accord with the relevant IRM provisions in proceeding to consider Mr. Stevenson's financial wherewithal after not receiving a response from the Collection Division. *See* IRM 8.22.7.4.1(2); *cf. Abraham v. Commissioner*, T.C. Memo. 2021-97, at *14 ("A settlement officer does not abuse her discretion when she relies on relevant [IRM] provisions in evaluating collection alternatives.").

**[*9]**   To reflect the foregoing,

*An appropriate order and decision will be entered.*