T.C. Memo. 2012-53

UNITED STATES TAX COURT

MATTHEW L. KARAKAEDOS AND DIANE D. KARAKAEDOS, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 11011-10L.               Filed February 27, 2012.

Matthew L. Karakaedos and Diane D. Karakaedos, pro se.

<u>Carol-Lynn E. Moran</u>, <u>Gloria M. Juncadella</u>, <u>Thomas M. Rath</u>, and <u>Jason M. Kuratnick</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

MORRISON, Judge:  The petitioners, Matthew L. Karakaedos and Diane L. Karakaedos, challenge the determination of the IRS Appeals Office sustaining the July 21, 2009, filing of a notice of federal tax lien relating to the petitioners' unpaid income-tax liabilities for tax years 2004, 2005, and 2006.  Our jurisdiction over the dispute is established by sections 6320(c) and 6330(d) of the Internal Revenue Code (Code).  Unless otherwise indicated, all references to sections are to the Code, as amended.  The issue for decision is whether the Appeals Office abused its discretion by sustaining the filing of the notice of federal tax lien.  We hold that the Appeals Office did not abuse its discretion, except that, as the respondent essentially concedes, the Appeals Office should have abated the fees that had been charged to the petitioners to reinstate installment agreements as to which they were repeatedly declared by the IRS to be in default.

FINDINGS OF FACT

The petitioners resided in Pennsylvania at the time they filed the petition.

The petitioners were, and are, married.  They filed joint income-tax returns for the 2004, 2005, and 2006 tax years.  As shown on the table below, they filed

the returns late, and they did not pay the full amounts of the liabilities reported on

the returns.

| Joint income tax returns for 2004, 2005, and 2006 | | | |
|---|---|---|---|
| Year | Date filed | Tax liability reported | Income-tax withholding reported |
| 2004 | Apr. 10, 2007 | $12,390 | $5,179 |
| 2005 | June 4, 2007 | 12,749 | 5,630 |
| 2006 | May 7, 2007 | 12,218 | 5,928 |

The IRS assessed the tax liabilities, additions to tax, and interest for the 2004 tax

year on May 28, 2007, for the 2005 tax year on July 16, 2007, and for the 2006 tax

year on May 28, 2007. On the same dates, the IRS issued statutory notices of

balance due for each of the three respective years.

The IRS negotiated various installment agreements with the petitioners that

required them to make monthly payments towards their tax liabilities for the 2004,

2005, and 2006 tax years. The table below summarizes these installment

agreements:

| Installment agreements between the IRS and petitioners | | | |
|---|---|---|---|
| Date of agreement | Tax years | Date of default or date of IRS's notice of default | Provisions in agreement regarding ability of IRS to file lien notice |
| Unknown | Un-known | The IRS issued a Nov. 10, 2008 notice of default for failure to pay additional taxes. | Unknown |
| Jan. 8, 2009 | 2001 2003 2004 2005 2006 | The IRS issued an Apr. 6, 2009 notice of default for failure to pay additional taxes. | Allowed IRS to file notice of lien |
| Apr. 10, 2009 | 2003 2004 2005 2006 | The IRS issued a June 15, 2009 notice of default for failure to provide an updated financial statement. | Allowed IRS to file notice of lien |
| July 14, 2009 | 2001 2002 2003 2004 2005 2006 | No notice of default is in the record, but the parties stipulated that petitioners were in default on the July 14, 2009 agreement sometime after the notice of lien was filed on July 21, 2009. | Allowed IRS to file notice of lien if petitioners do not meet all conditions of agreement |
| Oct. 20, 2009 | 2003 2004 2005 2006 | No notice of default is in the record. On Apr. 1, 2010, the IRS Appeals Office agreed to allow petitioners to enter into an installment agreement, which suggests that by then the IRS considered petitioners in default on the Oct. 20, 2009 installment agreement. | Allowed IRS to file notice of lien |

In July 2008, the petitioners apparently had an installment agreement with the IRS, because on July 2, 2008, the IRS sent them a monthly statement informing them that their next installment payment of $500 was due July 10, 2008. The statement indicated that installment-agreement payments would be applied to the "oldest tax owed, then penalties, then interest." The statement showed that the most recent payment, $500, was applied to the balance of a tax liability for the 2001 tax year. Apparently this tax liability, and all liabilities referred to in the notices described in this opinion, were joint income-tax liabilities of the petitioners. The $500 payment was presumably made pursuant to the same installment agreement that required the payment on July 10, 2008. The statement showed that the unpaid balance was $616.97 for the 2001 year (including a penalty of $75.07 and interest of $541.90), $1,910.11 for the 2002 year (including a penalty of $69.59 and interest of $350.67), and $7,493.67 for the 2003 year (including a penalty of $769.33 and interest of $1,605.15). The statement indicated that "Liabilities not shown:" were $31,303.15, including a penalty of $1,031.85 and interest of $2,251.15. The terms of the installment agreement to which the statement referred are not in the record.

On July 10, 2008, the petitioners paid the IRS $500. The IRS applied the payment to their 2001 tax liability.

On August 13, 2008, the petitioners paid the IRS $500. The IRS applied the payment to their 2001 tax liability. The record does not explain how the petitioners' unpaid 2001 tax liability could have absorbed this entire $500 payment. As we note below, the respondent (whom we refer to as the IRS) concedes there were "some problems" with respect to the 2001 tax liability, which presumably means problems with the IRS's ongoing calculations of the unpaid amount of the liability.

On September 10, 2008, the petitioners paid the IRS $500. The IRS applied the payment to their 2002 tax liability.

On October 14, 2008, the petitioners paid the IRS $500. The IRS applied the payment to their 2001 tax liability. The record does not explain how the petitioners still had an unpaid 2001 tax liability after application of their prior payments.

On November 10, 2008, the IRS notified the petitioners that they had defaulted on an installment agreement. The notice said:

> This is a formal notice of our intent to terminate our installment agreement 30 days from the date of this notice. You defaulted on your agreement because you didn't pay the additional federal tax you owe. The agreement states that we may terminate your agreement and collect the entire amount of your liability if you don't meet all the conditions.

The notice stated: "To prevent collection action you must pay in full any additional federal taxes you owe. We will charge a reinstatement fee that we will take from your first payment." The notice informed the petitioners that they had an unpaid balance of $472.40 for the 2002 year, including a penalty of $69.59 and interest of $370.87. As explained later, the IRS does not ultimately take the position in this litigation that the petitioners defaulted on the installment agreement about which the IRS issued a November 10, 2008 notice of default.

On November 14, 2008, the petitioners paid the IRS $500. The IRS applied the payment to their 2001 tax liability. The record does not explain how the petitioners had an unpaid 2001 tax liability at this time.

On November 26, 2008, the petitioners received a bill from their accountant, Michael Horn. The bill sought fees for the following services: "Appeared before the Internal Revenue Service to petition successfully for reinstatement of a lapsed payment agreement with automatic debit from taxpayer's checking account."

On December 3, 2008, the petitioners' accountant submitted to the IRS a Form 433-D, Installment Agreement. Apparently, the proposal reflected on the Form 433-D was the result of the negotiations for which the petitioners' accountant billed them on November 26, 2008. The Form 433-D requested a direct debit installment agreement for the tax years 2003, 2004, 2005, and 2006.

(It is unclear from the record exactly what years were covered by the installment agreement or agreements that governed the monthly payments made by petitioners up to this point.) The Form 433-D contains a section entitled "Terms of this agreement". One of the terms was: "We [the IRS] may file a Federal Tax lien if one has not been filed previously." Another term was: "You must pay a $43 user fee, which we have authority to deduct from your first payment(s)." Another term was: "If you default on your installment agreement, you must pay a $24 reinstatement fee if we reinstate the agreement." As noted below, the IRS accepted the installment agreement on January 8, 2009.

On December 8, 2008, the petitioners paid the IRS $1,045. The IRS applied this payment to their 2003 tax liability. The payment represented a $500 payment for January, a $500 payment for February, and a $45 "fee", according to a later letter from the petitioners to the IRS.

On December 8, 2008, the IRS notified Diane Karakaedos that $500 of tax had been overpaid for the 2001 tax year and that the IRS applied the overpayment to the 2002 liability (to the extent of $472.67) and to the 2003 liability (to the extent of $27.33). Neither party suggests that it is significant that this notice and some other subsequent notices were sent to one petitioner rather than both. The way in which the IRS applied the $500 payment suggests that an IRS employee believed that as of

December 8, 2008, the petitioners had an outstanding balance of $472.67 for 2002. The record does not reveal why this $472.67 amount is slightly different from the $472.40 balance noted on the November 10, 2008 notice.

On December 31, 2008, the IRS sent the petitioners a monthly statement reminding them that their next payment of $500 was due on January 10, 2009. The statement indicated that installment payments would be applied to the "oldest tax owed, then penalties, then interest." The statement showed that the petitioners' last payment of $500 had been applied to their 2001 tax liability. In addition, the monthly statement showed that the current balance was $75.08 for 2001 (including a penalty of $75.07 and interest of $0.01), $6,674.57 for 2003 (including a penalty of $839.65 and interest of $1,788.06), and $13,257.94 for 2004 (including a penalty of $685.04 and interest of $1,297.21). The statement reflected that "Liabilities not shown:" were $19,417.44, including a penalty of $870.31 and interest of $1,802.67. (This monthly statement was attached to the Form 433-D that we discussed earlier. The parties do not explain how a monthly statement with a date of December 31, 2008, came to be attached to the Form 433-D, which was submitted to the IRS on December 3, 2008.)

On January 8, 2009, the IRS issued to the petitioners a letter accepting their December 3, 2008 request for a direct debit installment agreement. The letter stated that the agreement covered the tax years 2001, 2003, 2004, 2005, and 2006, even though the petitioners' Form 433-D did not refer to the year 2001. The letter stated that the IRS would deduct a payment of $500 from the petitioners' bank account on the 10th day of every month.

On March 10, 2009, the petitioners paid the IRS $500. The IRS applied the $500 payment to their 2001 tax liability (to the extent of $75.08) and their 2003 tax liability (to the extent of $424.92).

On March 30, 2009, the IRS sent Matthew Karakaedos a notice that the 2001 tax account was overpaid by $75.08 and that the $75.08 was applied to the 2003 tax liability.

On March 30, 2009, the IRS sent the petitioners a letter stating that it had no record that they had responded to "our [the IRS's] previous notices." The letter went on to say: "As a result, your account has been assigned to this office for enforcement action, which could include seizing your wages or property."

On April 6, 2009, the IRS sent the petitioners a notice informing them that they had defaulted on their installment agreement (presumably the January 8, 2009, agreement). The letter stated:

> This is a formal notice of our intent to terminate your installment agreement 30 days from the date of this notice. You defaulted on your agreement because <u>you didn't pay the additional federal tax you owe.</u> The agreement states that we may terminate your agreement and collect the entire amount of your tax liability if you don't meet all the conditions.

The notice stated: "To prevent collection action you must <u>pay in full any additional federal taxes you owe.</u> We will charge a reinstatement fee that we will take from your first payment." The notice contained an "Account Summary" showing a current balance of $6,268.20 on the 2003 tax account (including a penalty of $866.89 and interest of $1,854.45). The notice does not contain information about tax years other than 2003. As explained later, the IRS does not ultimately take the position in this litigation that the petitioners defaulted on the installment agreement.

On April 10, 2009, the IRS wrote the petitioners a letter accepting their offer to enter into another installment agreement. The date of the petitioners' offer is not revealed by the record, and no written offer is in the record. The heading of the letter reflected that the letter, and therefore the installment agreement, concerned the tax years 2003, 2004, 2005, and 2006. The letter did not indicate what arrangement was made, if any, for payment of the 2001 or 2002 balance, or whether balances still existed for these years. The letter stated: "Thank you for making arrangements to resolve your account. We've accepted your offer to have your monthly

installment payments automatically taken from your checking account." The IRS stated that it would deduct a $500 payment on the 10th day of each month. It also stated that it would charge a $52 user fee to cover the cost of providing the installment agreement. The letter warned the petitioners that

> You need to meet all of the conditions of the Installment Agreement. When someone doesn't meet the terms of their Installment Agreement, we cancel it. We then begin to act to collect the full amount of the tax liability. In addition, canceled Installment Agreements that we later reinstate require the payment of a $45 reinstatement fee.

The letter listed 10 conditions of "this agreement". The 10th condition was: "We may file a federal tax lien to protect the interest of the federal government."

On April 13, 2009, the IRS wrote Matthew Karakaedos a letter informing him that "We have no record that you responded to our previous notices. As a result, your account has been assigned to this office for enforcement action, which could include seizing your wages or property." The letter asked him to pay $75.08 for the 2001 tax liability. The letter stated that the $75.08 amount comprised accrued interest of $.01 and a late payment penalty of $75.07. A similar letter was sent to Diane Karakaedos.

On April 15, 2009, the petitioners paid the IRS $500. The IRS applied the payment to their 2003 tax liability.

On May 13, 2009, the petitioners paid the IRS $455. The IRS applied the payment to their 2001 tax liability.

On June 11, 2009, the petitioners paid the IRS $500. The IRS applied the payment to their 2003 tax liability.

On June 15, 2009, the IRS sent the petitioners a notice informing them that they had defaulted on their installment agreement (presumably the April 10, 2009, installment agreement). The letter stated:

> This is a formal notice of our intent to terminate your installment agreement 30 days from the date of this notice. You defaulted on your agreement because you didn't provide an updated financial statement as we requested. The agreement states that we may terminate your agreement and collect the entire amount of your tax liability if you don't meet all the conditions.

The letter continued: "To prevent collection action, you must provide us with your updated financial statement. We will charge a reinstatement fee that we will take from your first payment." The notice contained an account summary showing $13,683.06 as the unpaid balance for the 2004 year, including a penalty of $865.32 and interest of $1,542.05. The notice did not contain information regarding tax years other than 2004. As explained later, the IRS does not ultimately take the position in this litigation that the petitioners defaulted on the April 10, 2009, installment agreement.

On July 14, 2009, the IRS issued the petitioners a letter informing them that their installment agreement had been reinstated for the six tax years 2001 through 2006. The letter stated:

> This is in response to our telephone conversation on July 2, 2009, requesting a payment arrangement to resolve your account with the IRS.
>
> Based on your payment proposal, we have established an installment plan for you on the tax periods shown above. Your payment is $500.00, due on the 10TH of each month, beginning on Aug. 10, 2009.

The letter also stated:

> We charge a $45.00 user fee to cover the cost of providing installment agreements. The fee will be deducted from your first payment. YOUR FIRST PAYMENT MUST BE AT LEAST $500.00 TO COVER THE FEE, EVEN THOUGH YOUR REMAINING PAYMENTS MAY BE FOR LESS. Please write "User Fee" on the first payment so that the payment will be properly credited.

The letter listed seven conditions of the installment agreement. There was no condition that allowed the IRS to file a notice of tax lien without the petitioners having defaulted on the installment agreement, as there was with the January 8 and April 10, 2009 installment agreements. The letter stated that if the petitioners did not meet all the conditions of the installment agreement, the IRS could cancel the agreement and could take enforcement actions to collect the full amount of the liability, including "filing a lien against your property". The letter stated that "If we

cancel your installment agreement and you later apply for and receive reinstatement, you will have to pay a reinstatement fee."

On July 21, 2009, the IRS filed a notice of lien with Philadelphia County, Pennsylvania, to secure the collection of the petitioners' federal income-tax liabilities for tax years 2004, 2005, and 2006. On the same day the IRS mailed a letter to the petitioners notifying them that it had filed a notice of lien and informing them that they had the right to request an administrative hearing to appeal the filing of the notice of lien. Although the notice of lien was filed on July 21, 2009, it was prepared and signed on July 8, 2009, in Detroit, Michigan.[1]

The parties have stipulated that "Subsequent to the filing of the notice of federal tax lien, petitioners' installment agreement defaulted."

On July 29, 2009, the IRS sent the petitioners a monthly statement reminding them that their next payment of $500 was due on August 10, 2009. The statement indicated that installment payments would be applied to "the oldest tax owed, then penalties, then interest." The statement showed that the current balance was $75.08 for 2001 (including a penalty of $75.07 and interest of $.01), $4,894.17 for 2003 (including a penalty of $888.97 and interest of $1,915.34), and $13,834.66 for 2004

[1]Here and in some other parts of the opinion, we use the term "notice of lien" instead of the lengthier "notice of federal tax lien".

(including a penalty of $865.32 and interest of $1,621.21). It reflected that "Liabilities not shown:" were $20,253.38 (including a penalty of $1,228.68 and interest of $2,280.24).

On August 18, 2009, the petitioners sent the IRS a request for an administrative hearing. In the request, they stated they wished the IRS to consider an installment agreement. They also challenged the filing of the notice of lien. The request did not contest the underlying liabilities.

On August 31, 2009, the IRS notified Matthew Karakaedos that the 2001 tax account was overpaid by $455 and that the IRS had applied the $455 payment to the 2003 tax liability.

On October 5, 2009, the IRS notified Matthew Karakaedos that the 2001 tax account was overpaid by $500 and that the IRS had applied the $500 payment to the 2003 tax liability.

On October 20, 2009, the IRS sent the petitioners a letter accepting their offer to enter into another installment agreement. The date of the offer is not reflected in the record, and no written offer is in the record. The IRS letter identified the tax periods in question as 2003, 2004, 2005, and 2006. It stated:

> Thank you for making arrangements to resolve your account. We've accepted your offer for an Installment Agreement. The agreement

covers the tax period(s) shown above. Please make your first payment of $500.00 by November 10, 2009. Thereafter, send us that amount by the 10th of each month, until you've paid the full amount you owe.

The letter stated further:

We charge a $105 User Fee to cover the cost of providing an Installment Agreement regardless of the amount of your agreed to payment. Although your approved Installment Agreement payment may be for less than $105, your first payment should be for at least $105 to cover the fee.

The letter warned the petitioners that

You need to meet all the conditions of the Installment Agreement. When someone doesn't meet the terms of their Installment Agreement, we cancel it. We then begin to act to collect the full amount of the tax liability. In addition, canceled Installment Agreements that we later reinstate require the payment of a $45 reinstatement fee.

The letter listed 10 conditions of the agreement. The 10th condition was: "We [the IRS] may file a federal tax lien to protect the interest of the federal government."

There is no offer letter or other document in the record describing the offer that was accepted.

On November 30, 2009, the IRS notified Matthew Karakaedos that "We have no record that you responded to our previous notices. As a result, your account has been assigned to this office for enforcement action, which could include seizing your

wages or property." The IRS asked him to pay the $75.08 balance on the 2001 tax account by December 16, 2009. The notice stated that the $75.08 amount comprised accrued interest of $.01 and a late payment penalty of $75.07. The IRS sent a similar notice to Diane Karakaedos.

On December 28, 2009, the IRS notified Diane Karakaedos that "We have no record that you responded to our previous notices. As a result, your account has been assigned to this office for enforcement action, which could include seizing your wages or property." The notice asked her to pay the $75.08 tax liability for 2001 by January 13, 2010. The notice stated that the $75.08 amount comprised accrued interest of $.01 and a late payment penalty of $75.07.

On February 8, 2010, the IRS notified Diane Karakaedos that the 2001 tax account was overpaid by $500 and that the IRS had applied the $500 overpayment to the 2003 tax liability.

The IRS Appeals Office assigned a settlement officer to handle the administrative hearing that the petitioners had requested on August 18, 2009. The Appeals Office wrote a letter to the petitioners on February 16, 2010, informing them that it had received their request for an administrative hearing. It scheduled a telephone conference call for March 23, 2010.

On March 23, 2010, the Appeals Office conducted a teleconference with the petitioners. The parties have stipulated that during the teleconference the petitioners "requested an installment agreement, withdrawal of the tax lien, and abatement of penalties and interest." The Appeals Office contacted the petitioners again by telephone on April 1, 2010. The parties have stipulated that the Appeals Office "agreed to allow petitioners to enter into an installment agreement" but that "Petitioners did not agree with sustaining the lien."

On April 16, 2010, the IRS Appeals Office issued a determination to the petitioners. The Appeals Office stated: "You did not present any information that would qualify you for a withdrawal of the NFTL. It is therefore Appeals [sic] determination that you be denied relief from the filing of the Notice of Federal Tax Lien (NFTL)." The Appeals Office also stated:

> It appears that your previous IA defaulted due to a balance on another module that you say was fully paid. The IRS had the right to file a lien because you received a CP 523 letter informing you that a tax lien could be filed.
>
> The Settlement Officer reviewed your financial information and at this point if an IA was granted, a federal tax lien would be filed if one was not already in place (due to the amount you owe and the type of IA).
>
> According to your account transcripts; [sic] the previous IA was a Partial Payment IA, which means that the time the IRS has to collect

> from you will expire before you have fully paid your balance. A lien
> determination is required for this type of IA.

(A CP 523 letter is a notice from the IRS to a taxpayer that the taxpayer had defaulted on an installment agreement. The letters of November 10, 2008, April 6, 2009, and June 15, 2009 were CP 523 letters.) The Appeals Office also stated: "The Settlement Officer did not consider the abatement of penalties and interest due to your IA defaulting because you had the right to appeal your defaulted IA with the CP 523 letter."

## OPINION

1. <u>Collection-Review Hearings</u>

The IRS is authorized to assess federal tax liabilities. Sec. 6201(a); 26 C.F.R. sec. 301.6201-1(a) (Apr. 1, 2011). Assessment occurs when the liability is recorded on the books of the IRS. Sec. 6203; 26 C.F.R. sec. 301.6203-1 (Apr. 1, 2011). The IRS is required by statute to notify the taxpayer within 60 days of assessing the tax and to demand payment. Sec. 6303(a). If the taxpayer refuses to pay after payment is demanded, a lien arises on the property of the taxpayer in favor of the federal government. Sec. 6321. The lien relates back to the time of assessment. Sec. 6322; William D. Elliott, Federal Tax Collections, Liens, and Levies, para. 9.03[1], at 9-6 (2008).

Until it files a notice of lien, the federal government's claim against the taxpayer is not valid against four classes of other creditors: purchasers, holders of security interests, mechanic's lienors, and judgment-lien creditors. See sec. 6323(a). An unfiled federal tax lien is not valid against someone who purchases property from the taxpayer. Sec. 6323(a); see also sec. 6323(h)(6) (defining "purchaser"). Thus, if a taxpayer who owns property burdened by an unfiled federal tax lien sells all the interests in the property to a third party, the government will generally have no interest in the property. See Newnham v. United States, 813 F.2d 1384, 1385 (9th Cir. 1987). Once the notice of lien is filed in the appropriate state or local government office, the federal tax lien is valid against any purchaser, holder of a security interest, mechanic's lienor, or judgment-lien creditor. See sec. 6323(a); Lindsay v. Commissioner, T.C. Memo. 2001-285, slip op. at 3, aff'd, 56 Fed. Appx. 800 (9th Cir. 2003); T. Keith Fogg, "Systemic Problems With Low-Dollar Lien Filing", 133 Tax Notes 88 (Oct. 3, 2011) ("The NFTL prevents sales and borrowings from defeating the IRS's claims to equity in property to which its lien attaches.").

Not more than five business days after filing the notice of lien, the IRS must provide the taxpayer written notice of the filing and must advise the taxpayer of the right to a hearing with the IRS Appeals Office. Sec. 6320(a)(1), (2), and (3). At the hearing, the Appeals Office must "obtain verification * * * that the requirements of any applicable law or administrative procedure have been met", consider any relevant issues raised by the taxpayer (including installment agreements and challenges to the appropriateness of collection actions), and consider whether any proposed collection action balances the need for efficient collection of taxes with the legitimate concern that any collection action be no more intrusive than necessary. Sec. 6330(c)(1), (2)(A)(iii), (3). The Tax Court is authorized by section 6330(d)(1) to review the determination of the Appeals Office. Where the underlying tax liability is not at issue, the Tax Court reviews the determination of the Appeals Office for abuse of discretion. See Sego v. Commissioner, 114 T.C. 604, 610 (2000). The petitioners do not dispute their underlying liabilities. Consequently, we review the determination of the Appeals Office for abuse of discretion.

2.      Contentions of the Parties

The petitioners contend that the IRS filed the notice of lien because the IRS concluded--erroneously--that they had defaulted on the April 10, 2009, installment agreement. They argue in their brief: "the Respondent's representative that initiated the Federal Tax Lien in July 2009 abused his discretion as the installment agreement defaulted without any fault of the Petitioners." Similarly, they argue: "Petitioners never had a federal tax lien filed for tax years 2004, 2005 and 2006 until their installment agreement defaulted for the fourth time due to IRS clerical errors in July 2009". Petitioners also contend that the July 14, 2009, installment agreement did not provide for a notice of lien to be filed. See Tr. 10.

The petitioners ask for three items of relief. First, they seek "the reimbursement of all fees associated with the reinstatement of 4 installments caused by IRS clerical errors". Second, they ask for reinstatement of an installment agreement for the 2004, 2005, and 2006 tax years. Third, they want the notice of lien to be withdrawn.

The IRS argues that the notice of lien was filed because the installment agreements were partial payment installment agreements, not because the IRS had declared the petitioners in default on several of the installment agreements. A

partial payment installment agreement, according to the IRS, is an installment agreement that allows a taxpayer to make payments in amounts less than the amounts that would be required to pay the outstanding liability before the collection period of limitations expires. The IRS contends that the Appeals Office had concluded that the notice of lien was filed because the installment agreement was a partial payment installment agreement. The IRS contends that it has a policy of filing a lien notice when it enters into a partial payment installment agreement. As to the petitioners' argument that the July 2009 installment agreement did not provide for a notice of lien to be filed, the IRS responds that "As a condition of reinstating the petitioners' prior installment agreement dated April 10, 2009, in a letter dated July 14, 2009, respondent reserved the right to file a federal tax lien to protect the interest of the government." The IRS makes the more general argument that an installment agreement does not preclude the filing of a tax lien. The IRS concedes that "there are unanswered questions surrounding the defaulting of the installment agreements". It states that some documents in the record indicate that there "were some problems with respect to petitioners' 2001 tax liability that may have affected the installment agreements for the years at issue" although it also asserts that "the notices advising petitioners that they had defaulted on their installment agreements

indicated that the problem was for a year other than the 2001 tax year." Its brief

continues:

> In any event, due to the issues with respect to petitioners' 2001 tax
> year, respondent will abate the fees charged to petitioners for the
> reinstatement of the installment agreements for the years in issue.
> Respondent will also ensure that the issues involving petitioners'
> account for the taxable year 2001 are resolved.

In its briefs the IRS does not take the position that the petitioners defaulted on (1)

the installment agreement that was declared in default on November 10, 2008, (2)

the installment agreement established January 8, 2009, or (3) the installment

agreement established April 10, 2009.

3.    Analysis

> a.    The July 14, 2009, Installment Agreement Did Not Require the IRS
>       To Withdraw the July 21, 2009 Notice of Lien.

The first question disputed by the parties is whether the July 14, 2009,

installment agreement required the IRS to withdraw the notice of tax lien that it filed

on July 21, 2009.  In evaluating the significance of the July 14, 2009, installment

agreement, we must consider section 6159, a provision related to installment

agreements that was originally added to the Code in 1988, and section 6323(j), a

provision related to withdrawals of notices of tax lien that was originally added to

the Code in 1996.  Technical and Miscellaneous Revenue Act of 1988, Pub. L. No.

100-647, sec. 6234(a), 102 Stat. at 3735; Taxpayer Bill of Rights #2, Pub. L. No. 104-168, sec. 501(a), 110 Stat. at 1460.  Section 6159(a) authorizes the IRS to enter into installment agreements, and section 6159(b)(1) provides that "Except as otherwise provided in this subsection, any agreement entered into * * * under subsection (a) shall remain in effect for the term of the agreement."   Section 6159(b)(2) allows the IRS to terminate an installment agreement if the taxpayer had provided inaccurate or incomplete information to the IRS before the execution of the installment agreement or if the IRS believes that collection of the tax is in jeopardy. Section 6159(b)(3) provides that the IRS may alter, modify, or terminate an installment agreement if the IRS determines that the financial condition of the taxpayer has significantly changed.  Section 6159(b)(4) provides that the IRS may alter, modify, or terminate an installment agreement if the taxpayer fails to make an installment payment, pay any other tax liability when due, or provide a financial condition update requested by the IRS.  Section 6159(b)(5) provides that the IRS cannot take any actions under section 6159(b)(2), (3), or (4) unless the IRS gives the taxpayer 30 days of advance notification.  26 C.F.R. sec. 301.6159-1(d) (Apr. 1, 2009) provided that

> Except as otherwise provided by the installment agreement, during the
> term of the agreement the director may take actions to protect the

interests of the government with regard to the unpaid balance of the tax liability to which the installment agreement applies * * *, including any actions enumerated in the agreement. The actions include, for example--* * * (3) Filing or refiling notices of federal tax lien.[2]

The July 14, 2009 installment agreement stated that the IRS could file a notice of lien if the petitioners defaulted on that installment agreement. The legal effect of such a provision is found in the regulations interpreting section 6323(j), to which we turn next. Section 6323(j)(1) provides:

In general--The Secretary [of the Treasury] may withdraw a notice of a lien filed under this section * * * if the Secretary determines that--

(A) the filing of such notice was premature or otherwise not in accordance with administrative procedures of the Secretary,

(B) the taxpayer has entered into an agreement under section 6159 to satisfy the tax liability for which the

---

[2]This regulation was later amended on November 25, 2009. T.D. 9473, 2009-52 I.R.B. 945. Because the amendment was "applicable on November 25, 2009", id., 2009-52 I.R.B. at 951, it does not govern the notice of lien at issue in this case, which was filed against the petitioners' property on July 21, 2009. As amended, the regulation now reads:

The IRS may take actions other than levy to protect the interests of the Government with regard to the liability identified in an installment agreement or proposed installment agreement. Those actions include, for example-- * * * (B) Filing or refiling notices of Federal tax lien; * * *.

26 C.F.R. sec. 301.6159-1(f)(3)(i) (Apr. 1, 2011).

lien was imposed by means of installment payments, unless such
agreement provides otherwise,

(C) the withdrawal of such notice will facilitate the
collection of the tax liability, or

(D) with the consent of the taxpayer or the National
Taxpayer Advocate, the withdrawal of such notice would
be in the best interests of the taxpayer (as determined by
the National Taxpayer Advocate) and the United States.

Interpreting section 6323(j)(1), 26 C.F.R. sec. 301.6323(j)-1(c) (Apr. 1, 2011)

(effective June 22, 2001), provides:

The Commissioner must determine whether any of the conditions
authorizing the withdrawal of a notice of federal tax lien exist if a
taxpayer submits a request for withdrawal in accordance with
paragraph (d) of this section. The Commissioner may also make this
determination independent of a request from the taxpayer based on
information received from a source other than the taxpayer. If the
Commissioner determines that conditions authorizing the withdrawal
are not present, the Commissioner may not authorize the withdrawal.
If the Commissioner determines conditions for withdrawal are present,
the Commissioner may (but is not required to) authorize the
withdrawal.[3]

26 C.F.R. sec. 301.6323(j)-1(b)(5), Example 2 (Apr. 1, 2011) (effective June 22,

2001) provides:

---

[3] "[P]aragraph (d) of this section", referred to in the regulation quoted above,
provides that a request for a withdrawal of a notice of lien must be made in writing
in accordance with procedures prescribed by the Commissioner of Internal Revenue
and it sets forth the information that must be included in the request. 26 C.F.R. sec.
301.6323(j)-1(d) (Apr. 1, 2011) (effective June 22, 2001).

A owes $1,000 in federal income taxes. A enters into an agreement to pay the outstanding federal income tax liability in installments. The agreement provides that a notice of federal tax lien may be filed if the taxpayer defaults. A timely pays the installments each month and has not defaulted in any way. Eleven months after entering into the installment agreement, the Internal Revenue Service files a notice of federal tax lien. Noting that there has been no default, the taxpayer asks the Internal Revenue Service to withdraw the notice of federal tax lien. In this situation, the Commissioner <u>may withdraw</u> the notice of federal tax lien because the taxpayer has entered into an installment agreement. [Emphasis added.]

Example 2 evinces an interpretation that if (1) the IRS enters into an installment agreement that provides that a notice of lien may be filed if the taxpayer defaults, (2) the taxpayer does not default, and (3) the IRS files a notice of lien, then the IRS "may" later withdraw the notice of lien. That the IRS "may" withdraw the notice suggests that the IRS is not required to withdraw the notice. Like the installment agreement described in Example 2, the July 14, 2009 installment agreement provided that a notice of lien could be filed if the petitioners defaulted, and the IRS filed a notice of lien. We conclude that the effect of this installment agreement is that the IRS may withdraw the notice of lien it filed against the petitioners, but it is not required to do so.

b.  None of the Other Installment Agreements Required the IRS To Withdraw the July 21, 2009 Notice of Lien.

Thus far our analysis has been limited to the July 14, 2009 installment agreement. In determining whether the IRS was required to withdraw the notice of lien, we also consider the potential relevance of the provisions of the prior installment agreements. The petitioners contend that they did not default on prior installment agreements, and the IRS does not ultimately contend otherwise. If the petitioners did not default on one of the prior installment agreements (or they were not otherwise terminated), then that prior installment agreement, and not the July 14, 2009 agreement, would arguably govern whether the IRS was required to withdraw the notice of lien it filed on July 21, 2009. The petitioners allege that the IRS erroneously declared them to have defaulted on four installment agreements. In their count they include the July 14, 2009 installment agreement. However, they stipulated that they were in default on this agreement, a stipulation that we construe to mean that the petitioners were in default on the agreement. Setting aside the July 14, 2009 installment agreement leaves three installment agreements: the agreement on which they were declared in default in November 2008, the agreement established January 8, 2009, and the agreement established April 10, 2009. There is no information in the record about the terms of the installment agreement on which

they were declared in default in November 2008. Therefore we cannot determine

that its provisions were relevant to the Appeals Office's decision not to withdraw

the notice of lien. The January 8 and April 10, 2009, installment agreements were

more permissive than the July 14, 2009 installment agreement regarding the filing of

notice of tax lien. The January 8, 2009, installment agreement had the following

term (which is found in the Form 433-D that petitioners submitted on December 3,

2008): "We may file a Federal Tax lien if one has not been filed previously." The

April 10, 2009, installment agreement contained the following condition: "We may

file a federal tax lien to protect the interest of the federal government." In providing

that a notice could be filed without regard to the petitioners' being in default on the

agreement, these two agreements gave more latitude to the IRS than the July 14,

2009 installment agreement, which had provided that a notice could be filed in the

event of default. Thus, these last two installment agreements do not serve as a basis

for mandatory withdrawal of the notice of lien filed against the petitioners.

> c. The Timing of the Filing of the Notice of Lien--Seven Days After the Establishment of the New Installment Agreement--Does Not Suggest That the IRS Erred in Failing To Withdraw the Notice.

We also consider the petitioners' suggestion that the notice of lien should

have been withdrawn because its filing was an indirect result of the IRS's erroneous

determination that they had defaulted on the April 10, 2009 installment agreement.

As discussed before, the IRS declared them in default on the April 10, 2009 installment agreement on June 15, 2009; it entered into a new installment agreement on July 14, 2009; and on July 21, 2009, it filed a notice of lien. The fact that the notice of lien was filed seven days after the establishment of the new installment agreement suggests that the notice of lien was filed because the IRS had entered into a new installment agreement. If the new installment agreement caused the IRS to file the notice of lien, then one could also surmise that the filing of the notice of lien would not have occurred but for the supposed default on the April 10, 2009, installment agreement. However, even if this chain of causality is correct, the Appeals Office did not err in its refusal to withdraw the lien filing. Its decision comported with the duties imposed on it by statute. The first set of duties is set forth in section 6330(c)(1), which requires the Appeals Office to consider whether the "requirements of any applicable law or administrative procedure have been met." Sec. 6330(c)(1). The Appeals Office determined that the requirements for filing a notice of lien had been met. It determined that a notice and demand for payment had been made, see sec. 6303, that a notice of federal tax lien filing had been issued,[4] that a notice of a right to a collection-review hearing had been issued,

---

[4]The petitioners argue that they did not receive notice of the filing of the
(continued...)

see sec. 6320(a)(3)(B), that a timely assessment had been made, see secs. 6201(a)(1), 6501(a), and that the tax had not been paid, see sec. 6321.

The second relevant set of duties is set forth in section 6330(c)(2)(ii) and (3)(C). The Appeals Office was required by section 6330(c)(2)(ii) to consider challenges to the appropriateness of the filing of the notice of lien; and it was required by section 6330(c)(3)(C) to consider whether the filing of the notice of lien balanced the need for the IRS to collect taxes with the legitimate concern of the petitioners that collection actions be no more intrusive than necessary. The Appeals Office determined that the filing of the notice of lien was appropriate and that the need to collect taxes was appropriately balanced with the concern of the petitioners. This determination was not an abuse of discretion. The notice of lien protected the government's right to receive full payment of the tax liabilities. The petitioners had entered into installment agreements to pay only $500 per month, and the Appeals

---

(...continued)
notice of lien within five business days after it was filed. Sec. 6320(a) provides that if the IRS chooses to file a notice of lien, it must provide the taxpayer with written notice of the filing not more than five business days after the filing. The IRS filed the notice of lien on July 21, 2009. On the same day, the IRS notified the petitioners that it had filed the notice of lien. Therefore, the IRS provided timely notification. The petitioners claim that the notice of lien was filed on July 8, 2009. But that was the date the notice was prepared, not the date the notice was filed.

Office concluded that these monthly payments would not have resulted in the full payment of the petitioners' tax liabilities.

In considering the appropriateness of filing the notice of tax lien and the petitioners' concern that the collection action be no more intrusive than necessary, it is conceivably appropriate to consider whether the terms of one of their installment agreements might have led the petitioners to reasonably believe that their compliance with an installment agreement would prevent the filing of a notice of lien and whether they took actions in reliance on such a belief. The January 8 and April 10, 2009, installment agreements both provided that the IRS could file a notice of lien. It was not until July 14, 2009, that the IRS entered into an installment agreement that contained the seemingly less permissive provision that a notice of lien could be filed in the event of default. This provision could have led the petitioners to believe that a notice of lien could be filed only in the event of default. But the notice of lien was filed only seven days after the July 14, 2009 agreement was accepted. The record does not suggest that during this short seven-day period the petitioners took any action in reliance on the IRS's leaving its lien unfiled. Because the January 8 and April 10, 2009, installment agreements warned the petitioners that the IRS could file a notice of tax lien at any time, and because the

July 14, 2009 installment agreement was in place only seven days before the lien

was filed, it does not appear that the provision in the July 14, 2009 installment

agreement that a lien could be filed in the event of default affects the issues of

whether the filing of the lien notice was appropriate and whether the filing of the

lien notice appropriately balanced the need to collect taxes against the petitioners'

legitimate concern that collection actions be no more instrusive than necessary.

d.     The Appeals Office Did Not Err in Considering Whether To Reinstate
       the Installment Agreement.

The next point to consider is the petitioners' request that the Court order the

IRS to reinstate an installment agreement.  The petitioners claim that reinstatement

is justified because they did not default on their prior installment agreements.

Even if the petitioners did not default on one or more of their installment

agreements, there was no error in the Appeals Office's handling of the matter of

reinstating the installment agreement.  The Appeals Office agreed to allow the

petitioners to enter into a new installment agreement.

e.     The Appeals Office Did Not Err in Not Offering a Full Payment
       Installment Agreement.

The petitioners also argue that the Appeals Office erred by not offering to

replace their partial payment installment agreement with a full payment installment

agreement.  They argue that a full payment installment agreement would have

obviated the need for the IRS to file a notice of lien.  We do not believe the Appeals Office erred in not offering a full payment installment agreement.  A full payment installment agreement would have required an increase in the monthly payments from the $500 monthly amount that the petitioners had  negotiated with the IRS.  If the petitioners wanted to renegotiate the $500 amount to a higher amount, they should have attempted to do so.  They did not.

       f.       The Appeals Office Erred by Not Abating Fees Imposed for Reinstating Installment Agreements.

The petitioners also seek reimbursement of all fees associated with the reinstatement of four installment agreements.  The petitioners were declared in default on the first installment agreement on November 10, 2008.  On December 3, 2008, the petitioners offered to enter into a new installment agreement.  Their offer form said that a $43 user fee would be paid.  The offer was accepted on January 8, 2009.  After the petitioners were declared to be in default on April 6, 2009, the IRS issued a letter on April 10, 2009 reinstating the agreement and stating that the reinstatement fee was $52.  After they were declared in default on this agreement on June 15, 2009, the IRS issued a letter on July 14, 2009, reinstating the agreement and stating that the fee for reinstatement was $45.  After the petitioners defaulted on this agreement, the IRS issued a letter on October 20, 2009 reinstating the agreement and stating that the reinstatement fee was $105.  The IRS's position on

whether these fees should have been abated is tantamount to a concession.[5]

Although on brief the IRS implies that the petitioners may have defaulted on the first

three installment agreements, the IRS does not actually take the position that they

did default. Furthermore, the Appeals Office, whose action we are reviewing, made

no determination of whether the petitioners defaulted on the installment agreements.

The Appeals Office acknowledged that the petitioners contended that the April 10,

2009 agreement--the third agreement referred to in the record--was wrongfully

terminated by the IRS: "It appears that your previous IA defaulted due to a balance

on another module that you say was fully paid." Having acknowledged that this

contention was made, the Appeals Office did not disagree with it. Nor does the IRS

explain why the Appeals Office's failure to abate the installment-agreement fees

was not an abuse of discretion. The only real position taken by the IRS in its brief

regarding whether the Appeals Office should have abated the fees is the promise

that the fees will be abated in the future. Because (1) the Appeals Office did not

determine that the petitioners defaulted on the prior installment agreements, (2) the

IRS does not ultimately contest that the petitioners complied with the prior

installment agreements, and (3) the IRS does not explain why the Appeals Office's

failure to abate the installment-agreement fees did not constitute an abuse of

[5]Although the petitioners seek reimbursement of the fees rather than abatement, it is more appropriate for the fees to be abated.

discretion, we hold that the Appeals Office erred in failing to abate the fees charged for establishing the following installment agreements: (1) the installment agreement established January 8, 2009, (2) the installment agreement established April 10, 2009, (3) the installment agreement established July 14, 2009, and (4) the installment agreement established October 20, 2009. Although the petitioners in their pretrial memorandum state that the fees they were charged for these agreements were $247, the correspondence from the IRS refers to only $245 in user fees and reinstatement fees (that is, $43 + $52 + $45 + $105). Therefore we consider the Appeals Office to have erred in failing to abate fees of $245. If the IRS had an argument that the petitioners were not entitled to abatement of the $105 fee for the October 20, 2009 installment agreement (on the grounds that the petitioners have stipulated that they genuinely defaulted on the prior agreement of July 14, 2009, and therefore the fee for reinstating the agreement should not be abated), the IRS did not articulate the argument in its brief, and we need not consider it.

To reflect the foregoing,

An appropriate order and decision will be entered.