T.C. Memo. 2020-125

UNITED STATES TAX COURT

JILL BETH SAVEDOFF, Petitioner <u>v.</u>
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 4346-18L.                    Filed August 31, 2020.

Jill Beth Savedoff, pro se.

<u>Jonathan Bartolomei</u> and <u>Lydia A. Branche</u>, for respondent.

MEMORANDUM OPINION

URDA, <u>Judge</u>:  In this collection due process (CDP) case petitioner, Jill

Beth Savedoff, seeks review pursuant to sections 6320(c) and 6330(d)(1)[1] of the

_____

[1]Unless otherwise indicated, all section references are to the Internal
Revenue Code in effect at all relevant times, and all Rule references are to the Tax
Court Rules of Practice and Procedure.  We round all monetary amounts to the

(continued...)

[*2] determination by the Internal Revenue Service (IRS) Office of Appeals[2] to uphold the filing of a notice of Federal tax lien (NFTL) with respect to unpaid Federal income tax liabilities for 2013 and 2014, as well as associated interest and additions to tax. Ms. Savedoff contends that she did not receive proper service of the notice of NFTL filing and that the Office of Appeals abused its discretion in its ultimate determination.

Respondent has moved for summary judgment under Rule 121, asserting that no disputed issues of material fact remain, that the IRS properly mailed the notice, and that the settlement officer acted within her discretion in sustaining the NFTL filing. We agree and accordingly will grant the motion.

## Background

The following facts are based on the parties' pleadings and motion papers, including the attached declaration and exhibits. See Rule 121(b). Ms. Savedoff lived in New York when she timely filed her petition.

---

[1](...continued)
nearest dollar.

[2]On July 1, 2019, the Office of Appeals was renamed the Independent Office of Appeals. See Taxpayer First Act, Pub. L. No. 116-25, sec. 1001, 133 Stat. at 983 (2019). As the events in this case predated that change, we will use the name in effect at the times relevant to this case, i.e., the Office of Appeals.

**[*3]** A.      <u>Ms. Savedoff's Tax Liabilities</u>

Ms. Savedoff is a self-employed attorney. As relevant here, she reported taxable income of $63,840 and Federal income tax of $23,841 on her 2013 Form 1040, U.S. Individual Income Tax Return, and taxable income of $53,277 and tax of $20,578 on her 2014 return. She, however, did not pay these reported tax obligations. The IRS accordingly assessed for each year the reported tax, an addition to tax under section 6651(a)(2) for failure to timely pay, an addition to tax under section 6654 for failure to pay estimated tax, and statutory interest.

Ms. Savedoff subsequently entered into an installment agreement with the IRS (first installment agreement) under which she paid $600 per month towards her outstanding tax liabilities. The IRS applied 17 of these monthly payments (from July 2014 until October 2015) against Ms. Savedoff's 2013 liability and 13 payments (from December 2015 until December 2016) against her 2014 liability. The IRS terminated the first installment agreement on February 27, 2017.[3]

B.      <u>CDP Proceeding</u>

On September 5, 2017, the IRS issued a notice to Ms. Savedoff informing her of the filing of an NFTL with respect to her unpaid 2013 and 2014 liabilities

---

[3]Neither party introduced the first installment agreement or any documentation providing the reasons for its termination.

[*4] and apprising her of her right to request a CDP hearing pursuant to section 6320.  Ms. Savedoff had not filed her 2016 Form 1040 when the IRS issued this notice, and the notice accordingly was mailed to the address listed on Ms. Savedoff's 2015 Form 1040.[4]

Ten days later, on September 15, 2017, Ms. Savedoff entered into an installment agreement with the IRS (second installment agreement) agreeing to the same monthly payment of $600 as before.  Ms. Savedoff declined the opportunity to enter into a direct deposit installment agreement, instead electing to send in her payments.  She also filed a timely Form 12153, Request for a Collection Due Process or Equivalent Hearing, on which she checked the box for "Installment Agreement" and requested a lien withdrawal on the ground that "[t]he lien notice was not properly served and is based on the wrongful termination of an installment agreement."

Ms. Savedoff's CDP case thereafter was assigned to a settlement officer in the Office of Appeals.  The settlement officer reviewed Ms. Savedoff's case file, which showed a tax liability for 2016 that brought her total liability (including her 2013 and 2014 liabilities) to $58,802.  The settlement officer noted the first

---

[4]The Form 4340, Certificate of Assessments and Payments, for Ms. Savedoff's 2016 tax year indicates that she filed her 2016 Form 1040 (on extension) on October 15, 2017.

[*5] installment agreement but stated that Ms. Savedoff had defaulted and was not current with estimated tax payments.[5]

On December 13, 2017, the settlement officer sent Ms. Savedoff a Letter 4837 scheduling a telephone CDP hearing. Among other things, the settlement officer requested that within 14 days Ms. Savedoff submit proof that she was in compliance with her 2017 estimated tax obligations. Ms. Savedoff did not provide the requested estimated tax information or otherwise communicate with the settlement officer before the scheduled hearing date.

The telephone CDP hearing was held on January 23, 2018. During the hearing Ms. Savedoff told the settlement officer that the notice of NFTL filing had been incorrectly sent to her previous address and then delivered to her by the then-current residents. Ms. Savedoff further stated that she had incurred approximately $59,000 in medical bills in 2015. The settlement officer discussed with Ms. Savedoff her obligation to make estimated tax payments, how she might avoid the IRS' levying on her property, and how she could modify the second installment agreement to apply to her 2016 liability as well.

_____

[5]By letter dated November 11, 2017, the IRS informed Ms. Savedoff that her new installment agreement would be suspended during the pendency of her CDP proceeding although it advised her to continue her monthly installment payments to minimize penalty and interest accruals.

**[\*6]** The conversation also encompassed Ms. Savedoff's request for lien withdrawal and the propriety of the NFTL filing. The settlement officer explained that the second installment agreement did not meet the IRS' "fresh start" criteria and that a lien was necessary to protect the Government's interest.[6] The settlement officer further observed that the NFTL filing was appropriate in that there was a liability when the lien was filed. Having reached an impasse, Ms. Savedoff requested the issuance of a notice of determination.

On February 2, 2018, the Office of Appeals issued a notice of determination sustaining the NFTL filing for 2013 and 2014. The notice stated that "the Internal Revenue Manual provisions require Service personnel to file a Notice of Federal Tax Lien when the total liabilities pass a certain threshold, which * * * [Ms. Savedoff's] did." It further described the filing of an NFTL as the least intrusive method of protecting the Government's interest because it did not involve the actual taking of property through levy or seizure. The notice concluded that, "[a]lthough * * * [Ms. Savedoff] was granted an installment agreement by the Collection Department, retaining the Notice of Federal Tax Lien balances the need

---

[6]Neither the notice of determination nor respondent's motion for summary judgment explains the "fresh start" criteria.

**[\*7]** for efficient collection with \* \* \* [her] concern that the collection action be no more intrusive than necessary."

Discussion

I.     <u>Governing Principles</u>

    A.    <u>Summary Judgment</u>

The purpose of summary judgment is to expedite litigation and avoid costly, time-consuming, and unnecessary trials. <u>Fla. Peach Corp. v. Commissioner</u>, 90 T.C. 678, 681 (1988). Under Rule 121(b) the Court may grant summary judgment when there is no genuine dispute as to any material fact and a decision may be rendered as a matter of law. <u>Sundstrand Corp. v. Commissioner</u>, 98 T.C. 518, 520 (1992), <u>aff'd</u>, 17 F.3d 965 (7th Cir. 1994). In deciding whether to grant summary judgment, we construe factual materials and inferences drawn from them in the light most favorable to the nonmoving party. <u>Id.</u> The nonmoving party, however, may not rest upon the mere allegations or denials in its pleadings but instead must set forth specific facts showing that there is a genuine dispute for trial. Rule 121(d); <u>see</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 324 (1986).

    B.    <u>Standard of Review</u>

We have jurisdiction to review the Office of Appeals' determination pursuant to sections 6320(c) and 6330(d)(1). Where, as here, the underlying tax

[*8] liabilities are not at issue, we review the determination of the Office of Appeals for abuse of discretion. Sego v. Commissioner, 114 T.C. 604, 610 (2000); Goza v. Commissioner, 114 T.C. 176, 182 (2000). In reviewing for abuse of discretion, we must uphold the Office of Appeals' determination unless it is arbitrary, capricious, or without sound basis in fact or law. See, e.g., Murphy v. Commissioner, 125 T.C. 301, 320 (2005), aff'd, 469 F.3d 27 (1st Cir. 2006); Taylor v. Commissioner, T.C. Memo. 2009-27, 97 T.C.M. (CCH) 1109, 1116 (2009).

## II. Abuse of Discretion

Ms. Savedoff contends that the Office of Appeals abused its discretion in sustaining the NFTL filing. We consider whether the settlement officer: (1) properly verified that the requirements of any applicable law or administrative procedure have been met; (2) considered any relevant issues Ms. Savedoff raised; and (3) considered whether "any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of * * * [Ms. Savedoff] that any collection action be no more intrusive than necessary." Sec. 6330(c)(3). Our review of the administrative record establishes that the settlement officer satisfied all of these requirements.

**[\*9]** A.     <u>Verification</u>

Ms. Savedoff argues that the IRS did not properly "serve" the notice of NFTL filing upon her.  In essence she is asserting that the settlement officer failed to verify that the IRS satisfied the notice requirements of section 6320(a)(2).  The settlement officer did not abuse her discretion in this regard.

Section 6320(a)(2)(C) provides that an NFTL shall be sent to the taxpayer's last known address.  <u>See also</u> sec. 301.6320-1(a)(1), Proced. & Admin. Regs.  A taxpayer's last known address is "the address that appears on the taxpayer's most recently filed and properly processed Federal tax return, unless the Internal Revenue Service (IRS) is given clear and concise notification of a different address."  Sec. 301.6212-2(a), Proced. & Admin. Regs.  This definition applies to lien notices.  <u>See</u> <u>id.</u> para. (c).

A taxpayer may submit a change of address by indicating a new address on her most recently filed tax return, by properly filing a written or electronic notice of change of address with the IRS, or by providing an updated address to the U.S. Postal Service for inclusion in its National Change of Address database.  <u>See</u> <u>Chapman v. Commissioner</u>, T.C. Memo. 2019-110, at \*15; <u>see also</u> sec. 301.6212-2(a) and (b), Proced. & Admin. Regs.; Rev. Proc. 2010-16, sec. 5.04, 2010-19 I.R.B. 664, 667.

**[\*10]** The IRS mailed the notice of NFTL filing to the address on Ms. Savedoff's 2015 Form 1040. Ms. Savedoff does not assert that she filed her 2016 return before September 5, 2017 (when the notice of NFTL filing was issued), and the Form 4340 for her 2016 tax year reflects that her return for that year was filed on October 15, 2017.

The IRS thus properly mailed the notice unless Ms. Savedoff gave the IRS clear and concise notification of a different address. Although Ms. Savedoff asserts that she had moved to a new address as of the time of mailing, she has not alleged, much less shown, that she provided sufficient notification to the IRS of any change in her address. Ms. Savedoff has failed to raise a genuine issue of material fact on this point, see Rule 121(d), and we accordingly conclude that the settlement officer did not abuse her discretion in determining that service was proper.[7]

Ms. Savedoff has not otherwise challenged verification, and we conclude from our review of the record that the settlement officer conducted a thorough

---

[7]Even assuming arguendo that the notice was mailed incorrectly, any error was harmless as Ms. Savedoff received the notice of NFTL filing in time to request a CDP hearing, and she did in fact request and receive a hearing. See, e.g., Med. Practice Sols., LLC v. Commissioner, T.C. Memo. 2010-98, 2010 WL 1780874, at \*7; cf. Estate of Brandon v. Commissioner, 133 T.C. 83, 87 (2009) ("[T]he intent of section 6320 was fulfilled because the estate received notice, made a timely request for, and received, a hearing relating to the NFTL.").

[*11] review of the account transcripts and verified that all applicable requirements were met.[8]

B.    Issues Raised

During her CDP hearing and before us Ms. Savedoff has requested that the NFTL be withdrawn.  Section 6323(j) permits the Secretary to withdraw an NFTL in certain enumerated circumstances, including where a taxpayer enters into an installment agreement.  Although her brief is not entirely clear on this point, Ms. Savedoff apparently contends that the lien should have been withdrawn in the light of the second installment agreement.

Section 6323(j) "is permissive, and nothing in it requires respondent to withdraw the NFTL because of * * * [an] installment agreement."  Berkery v. Commissioner, T.C. Memo. 2011-57, 101 T.C.M. (CCH) 1258, 1260 (2011); see sec. 301.6323(j)-1(c), Proced. & Admin. Regs. ("If the Commissioner determines conditions for withdrawal [of an NFTL] are present, the Commissioner may (but is not required to) authorize the withdrawal." (Emphasis added.)).  The existence of

---

[8]"Where the supervisory approval requirement of section 6751(b)(1) applies, the Appeals officer should obtain verification that such approval was obtained".  ATL & Sons Holdings, Inc. v. Commissioner, 152 T.C. 138, 144 (2019).  The approval requirement of sec. 6751(b)(1), however, does not apply to additions to tax under secs. 6651(a)(2) and 6654.  See sec. 6751(b)(2)(A).

[*12] the installment agreement by itself thus did not render the NFTL unnecessary or require its withdrawal.

In sustaining the NFTL the notice of determination further stated that "Internal Revenue Manual provisions require Service personnel to file a Notice of Federal Tax Lien when the total liabilities pass a certain threshold" and that retaining the lien was in the best interest of the Government even in the light of the valid second installment agreement. This conclusion was not an abuse of discretion.

As a general matter, the Internal Revenue Manual (IRM) provides that an NFTL should be withdrawn where, inter alia, a taxpayer has entered into a direct debit installment agreement and her aggregate unpaid balance of assessments on the installment agreement is $25,000 or less at the time of the request. See IRM pt. 5.12.9.3.2.1(3) and (4) (Oct. 14, 2013). Ms. Savedoff plainly did not qualify. She declined the opportunity to enter into a direct deposit installment agreement. See id. 5.12.9.3.2.1 (10) ("Taxpayers making payments under any other type of installment agreement are not eligible for consideration for withdrawal * * * unless they convert to a * * * [direct debit installment agreement.]"); see also Brown v. Commissioner, T.C. Memo. 2019-157, at *10. And her balance for 2013 and 2014 exceeded $25,000 at the time. See IRM pt. 5.12.9.3.2.1(4).

[*13] In summary, the determination to sustain the filing of the NFTL despite the existence of the second installment agreement was consistent with the relevant provisions of the IRM. We have previously held that a settlement officer does not abuse her discretion when she adheres to collection guidelines published in the IRM. Brown v. Commissioner, at *10. We see nothing to suggest a different conclusion here.[9]

C.    Balancing

In her opposition to the motion for summary judgment Ms. Savedoff argues that the filing of the lien was "overbearing and unjust" on the grounds that "there is no risk that IRS will not be paid monies owed and there are insufficient assets for the IRS to seize." From our review we are satisfied that the settlement officer duly considered the totality of Ms. Savedoff's circumstances before she concluded that the NFTL filing was not overly intrusive and was necessary to protect the Government's interest in efficiently collecting taxes. Ms. Savedoff had already been granted a second installment agreement by the time of her CDP hearing, and she fails to persuade us that maintaining the lien under the circumstances of this

---

[9]Ms. Savedoff also argues that the first installment agreement was wrongly terminated. She fails to explain, however, why this purportedly improper termination mattered, considering that the IRS granted her an identical installment agreement before she requested a CDP hearing. See Karakaedos v. Commissioner, T.C. Memo. 2012-53, 103 T.C.M. (CCH) 1250, 1258 (2012).

[*14] case was improper.  We fail to see an abuse in this regard.  See Shaw v. Commissioner, T.C. Memo. 2010-210, 100 T.C.M. (CCH) 292, 297 (2010); see also Stinchcomb v. Commissioner, T.C. Memo. 2009-259, 2009 WL 3762959, at *3.[10]

III.    Conclusion

Finding no abuse of discretion in any respect, we will grant summary judgment to respondent and sustain the notice of determination upholding the filing of the NFTL for the years at issue.

To reflect the foregoing,

An appropriate order and decision will be entered.

_____

[10]Ms. Savedoff seems concerned that the IRS will seize her bank accounts. No such collection action is before us.  As the settlement officer explained in the notice of determination, an NFTL filing does not involve the taking of property through levy or seizure.  To put it more plainly: "Pursuant to section 6321, the Federal Government obtains a lien against 'all property and rights to property, whether real or personal' of any person liable for Federal taxes upon demand for payment and failure to pay."  Berkery v. Commissioner, T.C. Memo. 2011-57, 101 T.C.M. (CCH) 1258, 1259 (2011).  "The purpose of filing, pursuant to section 6323, notice of the lien that arises under section 6321 is to protect the Government's interest in a taxpayer's property against the claims of other creditors."  Id.  Should the IRS attempt to collect by levy in the future, Ms. Savedoff would have the chance to request a CDP hearing with respect to the levy. See sec. 6330(a), (b), and (c).