T.C. Memo. 2021-4

UNITED STATES TAX COURT

MICHAEL J. BOETTCHER AND KATHERINE H. BOETTCHER, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 7127-17L.                    Filed January 12, 2021.

Joseph A. Buckles II, for petitioners.

William F. Castor and Vassiliki Economides Farrior, for respondent.

MEMORANDUM OPINION

URDA, Judge:  In this collection due process (CDP) case petitioners,

Michael J. Boettcher and Katherine H. Boettcher, seek review under section

6330(d)(1)[1] of the determination of the Internal Revenue Service (IRS) Office of

_____

[1]Unless otherwise indicated, all section references are to the Internal

(continued...)

[*2] Appeals[2] to uphold a notice of intent to levy with respect to their 2011, 2012, and 2013 Federal income tax liabilities, as well as associated interest and additions to tax. The record before us is insufficient to decide whether the settlement officer failed to properly consider the installment agreement requested by the Boettchers, and we will accordingly remand this case for a supplemental hearing.

## Background

The parties have submitted this case under Rule 122 for decision without trial. The Boettchers lived in Oklahoma when they timely filed their petition.

A.    The Boettchers' Tax Liabilities

Mr. Boettcher, a professor at the University of Oklahoma (previously, a prominent network news correspondent), and Mrs. Boettcher, an attorney, filed delinquent Federal income tax returns for 2011, 2012, and 2013. On these returns they reported taxable income of $208,662, $178,104, and $208,713, respectively, and Federal income tax of $62,139, $42,710, and $52,874, respectively. The

---

[1](...continued)
Revenue Code in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure. We round all monetary amounts to the nearest dollar.

[2]On July 1, 2019, the Office of Appeals was renamed the Independent Office of Appeals. See Taxpayer First Act, Pub. L. No. 116-25, sec. 1001, 133 Stat. at 983 (2019). As the events in this case predated that change, we will use the name in effect at the times relevant to this case, i.e., the Office of Appeals.

**[*3]** Boettchers' income tax withholdings for these years, however, covered only a fraction of their reported liabilities.

The IRS assessed for each year the reported tax, an addition to tax for failure to timely pay tax under section 6651(a)(2), an addition to tax for failure to pay estimated tax under section 6654, and statutory interest. For 2011 and 2012 the IRS also assessed additions to tax for failure to timely file tax returns under section 6651(a)(1).[3] As of March 16, 2018, the Boettchers' assessed tax liabilities for the years at issue totaled $166,874.

B.     CDP Proceeding

As part of its efforts to collect the Boettchers' unpaid 2011, 2012, and 2013 liabilities the IRS issued to each of the Boettchers a notice of intent to levy, which apprised them of their right to request a CDP hearing. In response the Boettchers timely submitted Form 12153, Request for a Collection Due Process or Equivalent Hearing, on which they checked the box for "Installment Agreement". They did not identify any other issues.

---

[3]Although the Boettchers did not file a timely 2013 tax return either, the IRS did not assess an addition to tax for failure to timely file a tax return for that year.

**[*4]** A settlement officer thereafter was assigned to the case and sent the Boettchers a Letter 4837 scheduling a telephone CDP hearing for September 30, 2016. In the letter the settlement officer represented that during the hearing she was required to consider "[a]ny relevant issue(s) you wish to discuss", including collection alternatives such as an installment agreement. She explained, however, that consideration of a collection alternative depended on the Boettchers' filing their 2014 and 2015 Federal income tax returns, complying with their estimated tax obligations, and providing certain financial information. Specifically the settlement officer asked for (1) a Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals, including (as specified in a parenthetical) "3 months of receipts: Income, Banks, Investments, Assets-statements from lenders on loans, monthly payments, payoffs and expenses", and (2) signed tax returns for 2014 and 2015.

In September 2016 the Boettchers sent the settlement officer a cover letter enclosing a Form 433-A and a copy of Mr. Boettcher's July 2016 pay stub from the University of Oklahoma. In the letter the Boettchers stated that they were unable to provide either their 2014 or 2015 tax return. They explained that the former return had only recently been mailed to the IRS because of problems with electronic filing and that the return for the latter year was not yet due.

[*5]  The Boettchers' letter also fleshed out their installment agreement request, proposing a payment plan of $1,000 per month.  The Boettchers stated that they had included the Form 433-A and a pay stub to verify Mr. Boettcher's earning information.  They further explained that Mrs. Boettcher had been experiencing medical problems and had not received a paycheck for the preceding three months.  The Boettchers noted that if Mrs. Boettcher's health problems persisted, "this case may become a proper candidate for currently not collectible."  Finally, they offered to provide "any other documentation in support of the information on * * * [the Form 433-A]" that the settlement officer required.

On their Form 433-A the Boettchers reported monthly net income of $174.  They based this amount on gross monthly income of $7,662--composed of monthly wages of $5,062 for Mr. Boettcher and $2,500 for Mrs. Boettcher, as well as oil royalty of $100--and monthly expenses of $7,488.  The Form 433-A identified various bank and credit card accounts, investments, real property, personal assets, and vehicles that the Boettchers owned.  The pay stub attached to the Form 433-A reported that for July 2016 Mr. Boettcher's total gross wages were $8,416, his Federal taxable gross wages were $6,497, and his net pay was $5,062.

[*6]   The settlement officer held the telephone CDP hearing as scheduled. During the hearing the Boettchers broached the proposed installment agreement, but the settlement officer took the position that they were not in compliance with their estimated tax obligations and thus ineligible for a collection alternative.  The Boettchers disagreed, and the settlement officer gave them a week to address this issue.

The Boettchers responded by letter that they were wage employees not required to pay estimated tax and again urged discussion of their proposed installment agreement.  The case then lay dormant for the next three months, aside from multiple phone calls from the Boettchers' attorney urging consideration of the proposed installment agreement.

On January 9, 2017, the Boettchers' attorney again inquired as to the status of the case, which spurred the settlement officer to review the case file.  The settlement officer concluded that the Boettchers were barred from collection alternatives on two new, distinct grounds:  (1) failure to file their 2015 tax return and (2) failure to provide the financial material requested in the initial scheduling letter.  The settlement officer informed the Boettchers of the first problem, which they addressed by sending her a copy of their 2015 return.  The settlement officer did not apprise the Boettchers of the second purported defect.

**[\*7]**  On February 16, 2017, the settlement officer analyzed the Boettchers' case file, concluding that their proposed installment agreement should be rejected because they had a greater ability to pay than reflected in their proposal.  In her notes the settlement officer refused to credit the Boettchers' Form 433-A, stating that it was not "fully completed".  Specifically, she stated that the Boettchers had left "bank info and investments blank" on the second page.  She also faulted them for failing to include business income and distributions from the Boettchers' outside ventures on the fourth page, although she observed at a later point in her notes that the Boettchers had "no other income/distributions--only wages" in 2016.  The settlement officer also noted that the amount the Boettchers reported "doesn't correlate with 2015 agi".

Having rejected reliance on the Form 433-A, the settlement officer turned to IRS information return processing transcripts and national and local expense allowances to determine the Boettchers' ability to pay.[4]  On the basis of transcripts showing that Mr. Boettcher had earned $78,702 and Mrs. Boettcher had earned $25,000 in 2016, the settlement officer concluded that they earned monthly gross income of $8,642.

---

[4]Pursuant to Congress' directive, the IRS has published "national and local allowances" to ensure that taxpayers entering into collection alternatives have adequate means to provide for basic living expenses.  Sec. 7122(d)(1) and (2)(A).

[*8]  Using an allowable expenses calculator, the settlement officer produced two different computations of the Boettchers' expenses, with the first showing monthly allowable expenses of $4,594 and the second showing monthly allowable expenses of $7,914.  The difference between the two computations turned on the expense amount associated with "Housing and Utilities".  The first computation showed $1,530 for this expense, which was the local housing and utility standard for a family of three in Oklahoma County, Oklahoma, effective March 28, 2016.  The second computation displayed a checkmark in the "Deviation Allowable" box and reflected an "Actual Amount Claimed" of $4,850 for "Housing and Utilities".  The settlement officer adopted the lower housing and utility amount of $1,530, noting in parenthesis "did not provide substantiation", which resulted in monthly allowable expenses of $4,594.

On the basis of these monthly income and expense amounts, the settlement officer concluded that the Boettchers could pay $4,048 monthly toward their tax liabilities.  After setting forth these amounts, the settlement officer noted that her Letter 4837 "asked tp to provide substantiation on income and expenses", but that "[n]o expense info was provided" despite "more than enough time to provide requested information."

**[\*9]**  In the wake of her review the settlement officer did not speak with the Boettchers about their proposed installment agreement or request any additional information.  Neither did she provide the expense calculations to them.

Instead, the Office of Appeals issued a notice of determination sustaining the proposed levy action and rejecting the installment agreement request.  As to the financial information provided by the Boettchers, the notice stated:  "We asked you to provide the requested information to us by September 16, 2016.  We received your correspondence."  The notice further explained:  "[W]e considered your financial information, unfortunately, we were unable to accept your proposal based on our review of your income and expenses you have the ability to make larger monthly payments."  The notice concluded that, "[a]fter considering your monthly income of $8,642.00 and allowable expenses of $4,594.00, you have disposable income of $4,048.00 a month to pay towards this debt."

Discussion

I.    Standard of Review

We have jurisdiction to review the Office of Appeals' determination pursuant to section 6330(d)(1).  Where, as here, the underlying tax liabilities are not at issue, we review the determination of the Office of Appeals for abuse of discretion.  Sego v. Commissioner, 114 T.C. 604, 610 (2000); Goza v.

**[\*10]** Commissioner, 114 T.C. 176, 182 (2000). In reviewing for abuse of discretion, we must uphold the Office of Appeals' determination unless it is arbitrary, capricious, or without sound basis in fact or law. See, e.g., Murphy v. Commissioner, 125 T.C. 301, 320 (2005), aff'd, 469 F.3d 27 (1st Cir. 2006); Taylor v. Commissioner, T.C. Memo. 2009-27, 97 T.C.M. (CCH) 1109, 1116 (2009). We do not substitute our judgment for that of the Office of Appeals but consider "whether, in the course of making its determination, the Appeals Office complied with the legal requirements of an administrative hearing." Charnas v. Commissioner, T.C. Memo. 2015-153, at \*7.

II.     Abuse of Discretion

    A.     Legal Background

At the CDP hearing a settlement officer must verify that the requirements of any applicable law or administrative procedure have been met, consider any relevant issues the taxpayers raised, and consider whether "any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of \* \* \* [the taxpayers] that any collection action be no more intrusive than necessary." Sec. 6330(c)(3).

"CDP hearings are designed to be a forum for considering taxpayers' legitimate disagreement with collection actions." Charnas v. Commissioner,

**[*11]** at *12. "It is therefore important to question whether a taxpayer's concerns have been properly addressed in the CDP hearing." Id.; see also Blosser v. Commissioner, T.C. Memo. 2007-323, 2007 WL 3145516, at *4 ("If section 6330(b) [providing a taxpayer's right to a fair hearing before a levy is made] is to be given any force, the Appeals Office must make its determination * * * after giving adequate consideration to all meritorious issues the taxpayer has raised during the hearing.").

B.    Analysis

In the CDP proceeding the Boettchers raised only one issue:  an installment agreement of $1,000 per month as a collection alternative.  The notice of determination rejected this proposal, explaining that, "based on our review of your income and expenses you have the ability to make larger monthly payments."  We find ourselves unable to properly evaluate whether the settlement officer abused her discretion in this regard.

As an initial matter, the IRS may reject an installment agreement when a taxpayer's monthly net income exceeds the amount he has offered to pay.  See Bero v. Commissioner, T.C. Memo. 2017-235, at *13.  Here, relying on the IRS internal transcripts and the national and local expense allowances published by the IRS, the settlement officer calculated that the Boettchers could pay $4,048 per

[*12] month toward their tax debt, suggesting that she acted within her discretion in rejecting the Boettchers' proposal of $1,000 per month.

Multiple unanswered questions cast doubt on the settlement officer's analysis, however. First, we note that in calculating the Boettchers' income and expenses, the settlement officer rejected the Form 433-A out of hand because of perceived omissions with respect to "bank info and investments" on the second page and business income and distributions on the fourth page. But the Form 433-A in the record before us plainly contains bank and investment information. The settlement officer herself noted that the Boettchers had no income besides wages in 2016, suggesting that there would be no business income or distributions to be reported. We are left perplexed as to the reasons for rejecting the Form 433-A.

The settlement officer's analysis of the Boettchers' income likewise raises questions. The settlement officer concluded that the Boettchers earned monthly gross income of $8,642, deriving this amount from IRS transcripts showing that Mr. Boettcher earned $78,702 and Mrs. Boettcher earned $25,000 in 2016. Using the transcript figures Mr. Boettcher ostensibly earned $6,559 per month ($78,702 ÷ 12 = $6,559). This amount is plainly inconsistent with his pay stub from the University of Oklahoma, which showed for July 2016 total gross wages of $8,416,

[*13] Federal taxable gross wages of $6,497, and net pay of $5,062. The settlement officer did not remark on this inconsistency, much less attempt to reconcile the numbers. Nor do we see a clear explanation for the discrepancy, particularly in the light of the settlement officer's observation that Mr. Boettcher had no outside income in 2016.

We are also concerned about Mrs. Boettcher's income. In their September 2016 letter to the settlement officer the Boettchers indicated that Mrs. Boettcher had not received a paycheck in several months and was facing severe health problems that might force the case into currently not collectible status. The record before us is unclear as to whether Mrs. Boettcher was able to continue working or she was forced to retire because of her medical problems. The record further gives no insight into whether the settlement officer considered whether the $25,000 in the IRS transcripts reflected ongoing employment or earnings before retirement-- crucial for determining the Boettchers' monthly income.

We also are troubled by the settlement officer's approach to the Boettchers' monthly allowable expenses. The settlement officer generated two different computations for the Boettchers, which varied only in their treatment of "Housing and Utilities". The second computation reflected a "Housing and Utilities" expense of $4,850, and included a checkmark for "Deviations Allowable".

[*14] Despite the implication that deviations from the local standard were permitted, the settlement officer nonetheless adopted the local standard for "Housing and Utilities", noting in parentheses "did not provide substantiation". We fail to track the settlement officer's reasoning in this regard. If the Boettchers failed to provide substantiation such that the settlement officer was required to use the local standard for "Housing and Utilities", we do not understand why she apparently would note that deviations from the local standard were allowable. The settlement officer did not provide the expense calculations to the Boettchers, much less explain her reasoning to them, and thus the record before us does not clear up the point.

The resolution of these concerns is not inconsequential. Had the settlement officer adopted the higher amount suggested for "Housing and Utilities", the Boettchers' monthly net income would have been $728 ($8,642 in income minus $7,914 in expenses), less than the $1,000 they were proposing to pay under their installment agreement. The settlement officer's reasoning in this regard thus is crucial to determine whether she abused her discretion in rejecting the installment agreement.

We finally note that the settlement officer chose to reject the Boettchers' installment agreement outright rather than giving them the opportunity either to

[*15] accept the amount she believed they were able to pay or to make a counter offer. We have previously found an outright rejection in similar circumstances to constitute an abuse of discretion. See Leslie v. Commissioner, T.C. Memo. 2016-171, at *28-*29, aff'd, 725 F. App'x 597 (9th Cir. 2018). Again, the record is silent, offering us no chance to weigh the propriety of the settlement officer's determination.

In his briefs respondent defends the rejection of the installment agreement on the ground that the Boettchers failed to supply the financial information requested by the settlement officer in her scheduling letter. This purported failure, however, was not cited in the notice of determination as a reason for rejection. To the contrary, the notice suggests that the Boettchers' financial information sufficed, stating that "[w]e asked you to provide the requested information to us by September 16, 2016. We received your correspondence" and later, "we considered your financial information, unfortunately, we were unable to accept your proposal based on our review of your income and expenses you have the ability to make larger monthly payments." We cannot uphold a notice of determination on grounds other than those actually relied upon by the settlement officer. See SEC v. Chenery Corp., 332 U.S. 194, 196 (1947); Leslie v. Commissioner, at *27-*28.

**[*16]** In short, we have a number of significant questions about the settlement officer's actions in this case that are directly related to our evaluation of the exercise of her discretion. As the record does not provide answers, we will order a remand to allow a supplemental hearing in the Office of Appeals that will give the Boettchers and the settlement officer an opportunity to fill in the blanks, addressing these and any other issues relevant to the Boettchers' installment agreement.[5]

III.    Conclusion

We will remand this case to the Office of Appeals for a supplemental CDP hearing. See Kelby v. Commissioner, 130 T.C. 79, 86 n.4 (2008). At the hearing the Boettchers shall present all information that the settlement officer reasonably requests and that they wish to have considered and analyzed in deciding their collection alternative request.

---

[5]The Boettchers also dispute the settlement officer's calculation of their ability to pay, the IRS' refusal to reopen their case file after the notice of determination was issued, the IRS' refusal of their Freedom of Information Act request, and the inadmissibility of the notice of determination under Fed. R. Evid. 603. In view of our foregoing conclusion, we see no need to address these issues at this time.

[*17] To reflect the foregoing,

<u>An appropriate order will be issued</u>.